UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kristen N. Cooley, *guardian of the estate of N.O.C., a minor*,

Plaintiff,

v.

Target Corporation, and
Target Enterprise, Inc.,

Defendants.

Civil No. 20-2152 (DWF/DTS)

MEMORANDUM OPINION
AND ORDER

Bradley E. Beckworth, Esq., Cody L. Hill, Esq., Jeffrey John Angelovich, Esq., Lisa P. Baldwin, Esq., Ross Leonoudakis, Esq., and Susan Whatley, Esq., Nix Patterson, LLP; Christopher P. Renz, Esq., and Karl L. Cambronne, Esq., Chestnut Cambronne PA; and Howard N. Wisnia, Esq., Wisnia PC, counsel for Plaintiff.

Donna Reuter, Esq., James Michael Keyes, Esq., Shannon L. Bjorklund, Esq., and Tiana Towns, Esq., Dorsey & Whitney LLP, counsel for Defendants.

INTRODUCTION

This matter is before the Court on Defendant Target Corporation's, and Target Enterprise, Inc.'s (together, "Target") Motion to Dismiss. (Doc. No. 110.) For the reasons below, the Court denies Target's motion.

BACKGROUND

Target is a well-known national retailer with corporate headquarters based in Minnesota. (Doc. No. 16 (First Amended Complaint ("FAC")) ¶¶ 22-23, 25.) Relevant to this case is Target's "Cat & Jack" clothing line for children. (*Id.* ¶ 26.) The Cat &

Jack products use a design pattern that Target describes as "scribble dots." (*Id.* ¶ 76.) The pattern is used on a line of products (the "Target Products" or "Cat & Jack Products") that includes clothing, backpacks, lunch bags, shoes, swimsuits, and other accessories. (*Id.*) Below are examples of the Cat & Jack Products and the "scribble dots" design:







Target / Clothing / Toddler Clothing / Toddler Girls' Clothing / Tops / T-shirts & Tanks

Toddler Girls' Polka Dot Short Sleeve T-Shirt - Cat & Jack™ Almond Cream
Shop all Cat & Jack™



(*Id.* ¶ 76.)

Plaintiff Kristin Cooley is the mother of N.O.C., a 16-year old living with Autism. (*Id.* ¶¶ 32, 33.) N.O.C. is an artist who has created a collection of original works of art, including his "sketch-style dot art." (*Id.* ¶¶ 2-6, 21, 32-50.) Plaintiff asserts that the guardianship of N.O.C.'s estate is the lawful owner of valid registered copyrights in the creative expressions in numerous works of art N.O.C. created (the "N.O.C. Works"). (*Id.* ¶ 4.) Plaintiff further alleges that among the many original elements in the N.O.C Works is the "unique manner in which he designs and draws imperfect sketch-style dots or circles that he elects to combine, arrange, and color into idiosyncratic patterns." (*Id.* ¶ 5.) Below are examples of the N.O.C. Works:

**<u>Copyrighted Work No. 1 – Registration No. VA 2-202-200</u>**



**Copyrighted Work No. 7 – Registration No. VA 2-202-259**



**Copyrighted Work No. 14 – Registration No. VA 2-202-202**



5

(*Id.* ¶ 36.)

After becoming aware of N.O.C.'s artwork, Target contacted N.O.C. directly through his Instagram account. (*Id.* ¶ 53.) In July 2018, Target invited then 14-year old N.O.C. to Target's headquarters in Minnesota to participate in a social media promotional project called "CrushCon." (*Id.* ¶¶ 7-8, 53-56.) The represented purpose of CrushCon was for Target to recognize talented young artists as social media influencers and provide them with tools to continue to pursue creative outlets and produce creative content. (*Id.* ¶¶ 56-57, 59.) Plaintiff alleges that during CrushCon, N.O.C. participated in various collaborative projects with Target employees and other young artists. (*Id.* ¶ 66.)

In August 2018, Plaintiff discovered that Target was selling its line of Cat & Jack Products that Plaintiff alleges "plainly and unlawfully copied, and/or were derivative works from, [N.O.C.'s] creative expressions in the [N.O.C.] Works." (*Id.* ¶ 67.) Plaintiff submits that Target promoted the Cat & Jack Products as having been "Designed With Kids, For Kids" and stating: "It's a kids world with Cat & Jack – our newest (and largest ever) line of clothing for kids and baby, with our youngest guests – real kids from around the country – helping design the collection, model the clothes, and so much more." (*Id.* ¶ 69.) In addition, Plaintiff alleges that Target specifically promoted the Cat & Jack Products to children with disabilities. (*Id.* ¶¶ 72-73.) Finally, Plaintiff alleges that Target had access to N.O.C.'s original dot-style works of art before Target launched the first iteration of its Cat & Jack brand in 2016. (*Id.* ¶ 71.)

6

In September 2018, Plaintiff informed Target that it was infringing the N.O.C. Works and demanded that Target cease and desist any further sale of the infringing products. (*Id*. ¶ 100.) Target denied the allegation of infringement.

In April 2020, Plaintiff obtained a California state court order appointing her as guardian of the Estate of N.O.C. (FAC, Ex. A.) The state court granted Plaintiff authorization to register a copyright on N.O.C.'s behalf. (*Id*.) Plaintiff registered fifteen separate works, listing N.O.C. as the author, but listing Plaintiff (Guardianship of the Estate of [N.O.C.]) as the sole copyright claimant. (*Id*., Ex. B.)

On May 19, 2020, Plaintiff filed the present action in the Central District of California. (FAC.) Plaintiff asserts two causes of action: (1) Direct Copyright Infringement in Violation of 17 U.S.C. § 501, *et seq*.; and (2) Inducement and Contributory Copyright Infringement. *Id*. The case was transferred to the District of Minnesota. Target now renews its motion (which the transferring court did not rule on) to dismiss both counts in the Amended Complaint with prejudice and without leave to amend.

## DISCUSSION

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v.*

*City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint.  *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.  As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

Target argues that this lawsuit should be dismissed because the Cat & Jack Products do not infringe the N.O.C. Works as a matter of law.  Specifically, Target argues that Plaintiff cannot claim copyright infringement with respect to:  (1) the idea of colored circles; or (2) commonly-occurring patterns such as polka dots.  In addition, Target argues that beyond patterns of hand-drawn dots, there is an absence of substantial similarity between the pattern used on Cat & Jack Products and the sketch dots in N.O.C. Works.

To establish a claim for copyright infringement, Plaintiff must prove "ownership of a valid copyright and copying of original elements of the work." *Taylor Corp. v. Four*

8

*Seasons Greetings, LLC*, 403 F.3d 958, 962-63 (8th Cir. 2005).  Plaintiff can establish copying by (1) direct evidence or (2) showing that Target had access to the copyrighted materials and showing that substantial similarity of ideas and expression existed between the alleged infringing materials and the copyrighted materials.  *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir. 2006) (citing *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987)).

Target argues that Plaintiff cannot establish substantial similarity between the N.O.C. Works and the pattern used on Cat & Jack Products.  Specifically, Target argues that a visual comparison of the N.O.C. Works to the Cat & Jack Products demonstrates that the two are not substantially similar as a matter of law.

Substantial similarity requires the works to be substantially similar in both ideas and expression.  *E.g.*, *Rottlund*, 452 F.3d at 731.  The determination of substantial similarity involves two steps:  an extrinsic test (to evaluate idea similarity) and an intrinsic test (to evaluate expression similarity).  *Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1143-44 (8th Cir. 1989); *Hartman*, 833 F.2d at 120.  "First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works.  Second, if there is substantial similarity in ideas, similarity of expressions is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression."  *Hartman*, 833 F.2d at 120 (citations omitted).

The extrinsic test depends on objective criteria, such as shapes, colors, materials, arrangement, and the subject matter used.  *See Nelson*, 873 F.2d at 1143; *see also Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002).  Because copyright

9

law protects the expression of ideas (and not the ideas themselves), the court must "filter out and disregard the non-protectable elements in making its substantial similarity determination." *Hoch v. MasterCard Int'l, Inc.*, 284 F. Supp. 2d 1217, 1222 (D. Minn. 2003) (citing *Cavalier*, 297 F.3d at 826). This does not mean, however, that works should not be compared as a whole or that infringement cannot be based on an original selection and arrangement of unprotected elements. *Cavalier*, 297 F.3d at 826. If, under the first test, there is substantial similarity of ideas, the Court moves to the second test. *Hoch*, 284 F. Supp. 2d at 1222. Under the second intrinsic test, courts consider "whether the ordinary, reasonable observer would find the works, taken as a whole, to be substantially similar." *Taylor Corp.*, 403 F.3d at 966 (quoting *Hartman*, 833 F.2d at 120).[1]

Here, under the extrinsic test, Target argues that because the N.O.C. Works are made primarily out of dots or circles and are arranged in a standard, grid-like manner, there are few protectable elements for the Court to consider. Target argues that because Plaintiff does not own a copyright in the circle or polka dot design itself, the Court must separate those basic shapes and patterns from any protectible aspect of the N.O.C. Works. Further, Target argues that while both the Cat & Jack Products and N.O.C. Works have

---

[1] Target's motion focuses on a single question: whether, as a matter of law, the Target Products are substantially similar to the N.O.C. Works under the extrinsic prong of the test for copyright infringement. Target maintains that if litigation proceeds, other issues will be litigated, including Target's independent development of its products before exposure to N.O.C.'s Works, lack of consumer confusion, and lack of similarity under the intrinsic prong. (Doc. No. 117 at 1-2 & n.1.)

hand-drawn circles, the similarity ends there. Further, Target argues that using the factors to be considered in analyzing the extrinsic prong (subject matter, shapes, colors, materials, arrangement, etc.) there is no substantial similarity as a matter of law. In so arguing, Target maintains that there is no substantial similarity because: (1) N.O.C.'s circles are drawn in a "circular motion" to create unique, imperfect and incompletely colored dots and some dots appear square-like, where Target uses only circles that appear to be created by drawing a circle and shading it in a haphazard way often using straight lines; (2) the N.O.C. Works use hues with a different vibrancy (pastel, bright, neon, muted), while Target uses harmonizing colors with similar vibrancy and sometimes a single color or monochromatic dots; (3) the arrangements used by Target and N.O.C. differ in terms of scale (N.O.C. uses hundreds of dots per work while Target uses dozens), spatial distancing (N.O.C. works are arranged in a lineal, equidistant grid while Target's circles are scattered and at different distances), and pattern (N.O.C. Works use an idiosyncratic arrangement of coloring dots with no apparent repetition of color pattern, where Target uses identical patterns that repeat); and (4) the materials are different in that N.O.C. Works are wall art created by markers on canvas and Target's products are children's apparel and related items with screen-printed patterns. Finally, Target argues that comparing the Cat & Jack Products to the distinctive characteristics of the N.O.C. Works does not show substantial similarity and that any similarities are outweighed by the differences. For example, Target submits that unlike the N.O.C. Works, its Cat & Jacks Products do not "arrange the dots in loosely, but not exactly, geometric patterns," "align[] the dots in a somewhat, but not precisely, linear arrangement," "choos[e]

11

particular color combinations," or "draw[] dots in a varying circular motion." (Doc. No. 113 at 17 (citing FAC ¶ 38(iii), (vi), (viii), (ix), and (x)).) And acknowledging the elements that do match (a series of unique hand-drawn circles of roughly the same size that do not overlap), Target argues that these elements are not sufficiently creative to warrant copyright protection or support a claim of infringement.

Plaintiff opposes Target's motion and argues that the First Amended Complaint plausibly alleges infringement of each of the N.O.C. Works. Noting objective similarities between the N.O.C. Works and the Target Products, Plaintiff argues that Target erroneously concludes that the individual elements of the N.O.C. Works are not sufficiently protectable. In support, Plaintiff argues that she does not claim copyright in the general idea of "colored circles" or "commonly occurring" polka dot patterns, and that the allegations are not limited to the "look and feel" of the N.O.C. Works. Instead, Plaintiff cites to the First Amended Complaint, including: (1) allegations of infringement of N.O.C.'s original expressions in the N.O.C. Works, including N.O.C.'s independent creation, selection, arrangement and coordination of each element contained therein; (2) specific facts demonstrating at least ten original and expressive elements embodied in the N.O.C. Works; and (3) facts supporting how N.O.C.'s creative choices to select, arrange, combine, and coordinate each of these warrant protection. (Doc. No. 116 at 11, *citing* FAC ¶¶ 3-7, 32-50, 81-86.)

Plaintiff alleges that the "calling card" in the N.O.C. Works "is the unique manner in which [N.O.C.] has designed, created, combined, arranged and colored imperfect, sketch-style dots that he hand-drew into idiosyncratic patterns." (FAC ¶ 35.) For

12

example, one of the alleged distinctive elements of the N.O.C. Works "is the imperfection in [N.O.C.'s] sketch-style dot art. That is, [N.O.C.] does not draw neat and tidy dots or circles . . . instead, he made the unique creative choice to select, design and arrange various elements . . . in an original and uniquely imperfect way that offers a form of symmetry without the tidiness of computerized, animated or photographed graphics or patterns." (*Id*. ¶ 37.) The alleged distinctive choices include imperfect dots in roughly circular shape, incompletely colored dots, the use of lines drawn in a varying circular motion to create imperfect dots, using distinctive coloring lines of medium thickness, drawing the dots roughly in similar (but not exact) sizes, using complementary colors with each circle generally being a single color, spacing the dots so that none overlap, arranging the dots in loosely (but not exactly) geometric patterns, aligning the dots in a somewhat, but not precisely, linear arrangement, and choosing particular color combinations. (FAC ¶¶ 38-40.)

The Court finds that Plaintiff has sufficiently alleged substantial similarity under the extrinsic test. First, Plaintiff has alleged original elements and creative choices— irregularly shaped, imperfect circles, shaded in different colors and aligned imperfectly at varying distances from each other—to warrant copyright protection. *See, e.g., Titlecraft, Inc. v. Nat'l Football League*, Civ. No. 10-758, 2010 WL 5209293, at *3 (D. Minn. Dec. 20, 2010) (explaining that common geometric shapes can be entitled to copyright protection); *Prince Grp., Inc. v. MTS Prods.*, 967 F. Supp. 121, 125 (S.D.N.Y. 1997) (finding that a "Mega Dot" fabric pattern with irregularly shaped dots that were shaded around the perimeter to be sufficiently original to meet the threshold of creativity for

copyright protection); *Olem Shoe Corp. v. Wash. Shoe Co.*, Civ. No. 09-23494, 2011 WL 6202282, at *9 (S.D. Fla. Dec. 1, 2011), *aff'd* 591 F. App'x 873 (11th Cir. 2015) (rejecting the argument that a "Ditsy Dots" design that consists of a distinct arrangement of big dots and small dots" is insufficiently original to warrant copyright protection). In addition, the Court finds that the particular arrangement of the elements in the N.O.C. Works warrant copyright protection. *See Rottlund Co. v. Pinnacle Corp.*, Civ. No. 01-1980, 2004 WL 1879983, at *14 (D. Minn. Aug. 20, 2004) (after filtering out individual elements, "the Court finds that the selection, arrangement, and combination of the elements expressed . . . are sufficiently original and detailed to be afforded copyright protection").

Further, the Court finds that Plaintiff has sufficiently alleged substantial similarity between the N.O.C. Works and the Target Products. The First Amended Complaint provides images of both the N.O.C. Works and Target Products, including a side-by-side comparison. (FAC ¶¶ 12, 36. 76.) Plaintiff alleges substantial similarities, and in particular facts that demonstrate similarities in the shapes, colors, and arrangement of the representation of the respective designs. (*Id*. ¶¶ 35-40, 76-85, 111-115.) In addition, a comparison of the N.O.C. Works and the Target Products, as alleged in the Amended Complaint, plausibly reveals substantial similarity. While Target highlights what it believes to be key differences between its products and the N.O.C. Works, those asserted dissimilarities do not negate the obvious similarities. For example, Target asserts that some dots in Cat & Jack Products appear to be shaded using haphazard straight lines, as opposed to being shaded by a circular motion. However, without conceding that such a

difference would be material, the First Amended Complaint contains photos of the scribbled dots used in some Target Products that appear to be shaded using a circular motion. (FAC ¶ 76.) Target also underscores that its Products use scattered, non-geometrically placed, dots. However, again, some images contained in the Amended Complaint appear to be similarly arranged upon visual comparison. (FAC ¶¶ 36-38, 76, 81.)

For the above reasons, the Court concludes that Plaintiff has sufficiently alleged substantial similarity under the extrinsic test.[2] Therefore, dismissal at this early stage of litigation is not warranted and Target's motion to dismiss is denied.

## CONCLUSION

The Court denies Target's motion to dismiss. The Court also notes, however, that victory at this stage does not necessarily guarantee victory at a later stage when the issues can be considered after discovery and expert opinion evidence comes into play. The Court encourages the parties to consider settling this matter.

---

[2] While not a basis of this motion, the Court concludes that the First Amended Complaint alleges similarity of expression such that "the ordinary, reasonable observer would find the works, taken as a whole, to be substantially similar." *Taylor Corp.*, 403 F.3d at 966.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS ORDERED THAT** Target's Motion to Dismiss (Doc. No. [110]) is **DENIED**.


Dated:  March 29, 2021            s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  United States District Judge

16