# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Kristen N. Cooley, *guardian of the estate of N.O.C., a minor,*

       Plaintiff,

v.

Target Corporation,
Target Enterprise, Inc., and
John Does 1-10,

       Defendants.

Case No. 20-cv-2152 (DWF/DTS)

**ORDER**

---

This is a copyright infringement lawsuit relating to a crayon-style polka-dot design, also called a "scribble dot," used in the Cat & Jack line of children's clothing and accessories sold by Target for the fall season in 2018. Plaintiff Kristen Cooley contends her son N.O.C. created 12 Copyrighted Works[1] that Target infringed in 17 Accused Products. Target asserts the dot design used in 16 of the 17 products was created by an in-house designer, and the remaining product used a dot design created by an outside vendor.

Cooley moves for evidentiary sanctions under Rule 37(e)(1) and (2) for the loss of various electronically stored information (ESI) that she contends is relevant to show Target copied N.O.C.'s Works. Dkt. No. 208. She argues Target intentionally destroyed ESI resulting in substantial prejudice to her ability to pursue her infringement claim. *Id.* For the reasons stated below, the Court denies the motion.

---

[1] Cooley originally asserted infringement of 15 Copyrighted Works, each entitled "Circle Happiness," but later narrowed it to 12 Works. *See* First Am. Compl. ¶ 36, Dkt. No. 16; Pl. SJ Oppo. Mem. 24, Dkt. No. 363.

**FACTUAL BACKGROUND**

Textile designer Rebecca Davis testified that in August 2017 she created the polka-dot art used in 16 of the 17 Accused Products. Davis Tr. 29, 37, Dkt. No. 213-8. Specifically, she took an orange-red crayon and drew polka dots on a sheet of paper, a process that took a couple of minutes. *Id.* at 37, 46. She scanned the paper document, which automatically saved the image to the scan folder on her laptop. *Id.* at 23, 50-51. She opened the scan in a different program, NedGraphics, where she could work with it digitally. *Id.* at 51. An image saved in that program becomes a TIFF. *Id.* at 51-52. Davis then reduced the level (intensity) of color. *Id.* at 53. Thereafter she created a "one-color repeat," a repeating pattern of her favorite dots that she chose from the color-reduced image. *Id.* at 49, 52, 54. She also created a multicolor version and additional color variations called "colorways." *Id.* at 54-55. All of the dots in the repeat pattern were from the original crayon drawing on paper that had been scanned. *Id.* at 55.

Davis saved all of her design files to the network drive. *Id.* at 19, 56, 215-17. She did not keep design files on her laptop. *Id.* at 23. There was a scan folder on her laptop which held only original paper scans, including the scan of her crayon dot drawing on paper. *Id.* at 19, 217.

Davis testified she did not typically use email to communicate about designs or artwork and such conversations usually took place in person. *Id.* at 229-30. The team exchanged designs by saving them to the same shared network drive that Davis used to store her design files. *Id.* at 19, 21, 151; Wortman Tr. 40-41, 70-71, 110, 134, 149, 153, 158, Dkt. No. 213-7.

Target's vendor Delta Galil stated its design team created the polka-dot design used in Accused Product No. 6 (a nine-piece underwear pack) in September 2017 using Illustrator software. Rayden Decl. ¶¶ 2-3, Dkt. No. 281. The dot design and pattern, along with other coordinating patterns used for the underwear, were based on inspiration from three purchased Trend Reports, a Trend Presentation, and European retail inspiration samples from mid-August 2017. *Id.* Exs. A to F, Dkt. No. 281-1.

The design process was finalized by around January 2018 so that Target's vendors could begin manufacturing the products. Smith Tr. 122-24, Dkt. No. 213-9.

Around June 2018, Samantha Kaufman, a copyrighter in Target's marketing department, identified N.O.C. as a young "influencer" to be invited to participate in the launch of Target's new "@TargetTag" Instagram handle. Kaufman Tr. 6, 13, Dkt. No. 213-6. @TargetTag was being launched to promote two young adult (age 14-22) clothing lines called Wild Fable and Original Use which had been introduced in late 2017 or early 2018. *Id.* at 8-9. @TargetTag did not involve the Cat & Jack line of children's clothing. *Id.* at 31. Kaufman was not involved in the product design for Cat & Jack. *Id.* at 36.

Kaufman searched for potential influencers by searching Instagram accounts that she followed. *Id.* at 14. She searched using her personal phone and her Target-issued phone. *Id.* at 42-43. One such account was that of a calligrapher (@itsaliving) who works with an art supplies company called Krink. *Id.* Kaufman went to Krink's page and found posted there a video of N.O.C. and artwork he made using Krink's products. *Id.* Once she found him on Krink, she looked at his Instagram profile. *Id.* at 15. She then proposed his name to the @TargetTag team, most likely in person during one of their informal daily "stand-up" meetings. *Id.* at 16-17.

3

N.O.C. and other young influencers were invited to attend an @TargetTag kickoff event called CrushCon that was held at Target headquarters in Minneapolis from July 16-18, 2018. *Id.* at 6-7, 28-29, 54. Target and N.O.C. entered into an Instagram Collaborator Services Agreement, effective July 5, 2018 through January 31, 2019, in which Target paid him to attend CrushCon and provide social media posts and content. Dkt. No. 139-1 at 15-25.

On September 25, 2018 Cooley's attorney sent a cease-and-desist letter to Target alleging the Cat & Jack products with the polka dots infringed N.O.C.'s copyrighted artwork. Dkt. No. 139-1 at 9-13. The letter enclosed photos of his artwork and photos of Cat & Jack polka-dot clothing and accessories, alleging that the design is "substantially similar to [N.O.C.]'s" and stating that N.O.C. has an exclusive clothing line featuring his artwork. *Id.* The letter stated that the Instagram Collaborator Services Agreement between Target and N.O.C. specifically excluded any use of his artwork in retail merchandise. *Id.* It further stated: "Many of these [Cat & Jack] items appear to have been released in 2018, which also suggests that Target was in the process of developing them while already in discussions with the Cooleys or at least aware of [N.O.C.] and his artwork." *Id.* at 12. It concluded by accusing Target of willful copyright infringement and demanding certain information from which the parties could arrive at an "appropriate monetary settlement." *Id.*

Target retained a law firm to investigate and prepare a response letter which was sent on October 10, 2018. Dkt. No. 139-1 at 31-35. Target did not impose a litigation hold at that time. Dkt. No. 213-16 at 9. Target's response stated it was "confident there has been no copyright infringement here." Dkt. No. 139-1 at 32. It explained its conclusion

rejecting Cooley's "suggest[ion] that the designs of these Items were copied from Mr.

Cooley during Target's recent social-media engagement with him." The letter stated, in

part:

> **To begin with, these Items were not designed by, or with any input from, Target's social media team ─ i.e., the individuals who worked on the July 2018 Instagram Agreement with Mr. Cooley. Target's social media team is entirely separate from its design and merchant teams.** Consequently, your suggestion that there was some relationship between the July 2018 Instagram Agreement and the design of the Items in question is simply not true. The Items are not in any way related to the social media team's work with Mr. Cooley.

> **In fact, the design of these Items was set well in advance of the Instagram Agreement with Mr. Cooley**. As one would expect for a retail operation with the size and scale of Target, product selections are typically finalized a year or more in advance of their appearance on store shelves. That was true here: all of the Items you have identified were designed and selected in 2017 or earlier, well in advance of the social media team's work with Mr. Cooley, and again, completely separate from it.

> **Furthermore, the Items did not originate from the same designer or even the same merchant team. Some of the Items were not designed by Target at all and were instead designed by a Target vendor.[2]** In each case, we have no reason to believe that anyone had even seen any of Mr. Cooley's work, let alone copied from it as you claim.

*Id.* at 31-32 (emphasis supplied).

The letter concluded by saying the Cat & Jack polka-dot items are "part of a

broader 'scribble dot' trend" (enclosing photos of various retailers' polka-dot clothing); that

"'scribble dots' are not unique to Target, Mr. Cooley, or anyone else"; and that there are

---

[2] Cooley faults Target for later "contradicting" these assertions in its discovery response stating all the Accused Products were designed by Davis without an outside partner or vendor. *See* Pl. Mem. 5 n.4, Dkt. No. 210. But as discovery continued and Davis was deposed, Target further revised its response to state that Davis created the polka-dot design used in 16 or the 17 Accused Products, while a vendor created the polka-dot design used in one Accused Product ─ which in essence tracks the original information Target provided in its October 10, 2018 letter. This strikes the Court as fairly typical clarification of facts that happens during the discovery process.

"serious questions whether they are copyrightable at all." *Id.* at 32-35. Target received no further communication from Cooley until this lawsuit was filed in May 2020.

Target first imposed a litigation hold on May 20, 2020. Dkt. No. 213-16 at 7-9. Davis was added to the hold on August 26, 2020. *Id.* at 8. Once Target places a litigation hold on an employee, the person's Outlook email, calendar items, and tasks are preserved as they existed on that day. *Id.* at 9. Target also directs the employee to preserve non-Outlook documents and information relevant to the dispute. *Id.* Target retains and deletes email correspondence, Outlook calendar appointments, instant messages, SharePoint files, and OneDrive files according to its retention policies, unless those emails or files are placed on a litigation hold or otherwise preserved outside their native platform. *Id.* at 10.

Fact discovery closed in December 2021 and this lawsuit is now in its end stages. Both parties have filed summary judgment and *Daubert* motions which are pending. Dkt. Nos. 317-18, 326-27, 337, 339-40, 347-48.

## ANALYSIS

Cooley argues that ESI was lost that is relevant to the "copying" element of her copyright infringement claim. An infringement claim requires a plaintiff to prove ownership of a valid copyright and copying of original elements of the work. *Rottlund Co., Inc. v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir. 2006). Copying may be shown (1) by direct evidence or (2) by showing the defendant had access to the copyrighted materials and showing that substantial similarity of ideas and expression existed between the alleged infringing materials and the copyrighted materials. *Id.* Cooley asserts Target had access

to N.O.C.'s Copyrighted Works and copied them to create the Accused Products, and

Davis and the vendor did not independently create the dot designs used on the products.

Rule 37(e) specifically addresses the loss of ESI that should have been preserved

"in the anticipation or conduct of litigation." It states:

> **(e) Failure to Preserve Electronically Stored Information.** If
> electronically stored information that should have been preserved in the
> anticipation or conduct of litigation is lost because a party failed to take
> reasonable steps to preserve it, and it cannot be restored or replaced
> through additional discovery, the court:
>
> (1)  upon finding prejudice to another party from loss of the information, may
> order measures no greater than necessary to cure the prejudice; or
>
> (2)  only upon finding that the party acted with the intent to deprive another
> party of the information's use in the litigation may:
>
> > (A)  presume that the lost information was unfavorable to the party;
> >
> > (B)  instruct the jury that it may or must presume the information was
> > unfavorable to the party; or
> >
> > (C)  dismiss the action or enter a default judgment.

Cooley argues she has been prejudiced in pursuing her copyright infringement

claim because Target failed to preserve certain ESI upon receipt of her September 25,

2018 cease-and-desist letter, and later destroyed ESI after her lawsuit was filed. Target

contends its duty to preserve evidence did not arise until the lawsuit was filed in May

2020; it in fact preserved and produced the design files at issue as they were kept on the

shared network drive; and, even if it had imposed a litigation hold on September 25, 2018,

the types of ESI identified by Cooley would have been in large part unavailable.

The obligation to preserve evidence begins when a party knows or should have

known that the evidence is relevant to current or anticipated litigation. *Paisley Park Enter.,*

*Inc. v. Boxill,* 330 F.R.D. 226, 232 (D. Minn. 2019); *see also* Fed. R. Civ. P. 37(e) advisory

committee note to 2015 Amendment (preservation of ESI is required when litigation is reasonably foreseeable). This obligation does not mean that a party must keep "every shred of paper, every e-mail or electronic document and every backup tape." *Id.* at 233. The duty to preserve extends to persons likely to have relevant evidence, *i.e.,* the key players, and applies to "unique, relevant evidence that might be useful to the adversary." *Id.* (internal citations omitted).

Target argues the cease-and-desist letter did not trigger any duty to preserve evidence because Cooley "did not have any registered copyrights when she sent the letter" and "Target could not have reasonably anticipated litigation in these circumstances." Def. Mem. 24, Dkt. No. 240. Target points to the fact that a copyright lawsuit cannot be filed until the copyright is registered,[3] and that it heard nothing back from Cooley's attorney after it sent its October 10, 2018 response to the cease-and-desist letter. But Target cites no authority stating that registration is dispositive of whether litigation is "anticipated" or "reasonably foreseeable" for purposes of analyzing a party's obligation to preserve ESI under Rule 37(e).

Target has suggested that no duty to preserve ESI arose upon its receipt of the cease-and-desist letter because, in essence, there was no merit to the claim of infringement. But the duty to preserve arises when litigation is reasonably foreseeable, not when "meritorious litigation" (as judged by the prospective defendant) is foreseeable.

---

[3] As Cooley points out, under the Copyright Act an author gains exclusive rights in his work as soon as the work is created, and infringement is prohibited from that point forward. *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC,* 139 S.Ct. 881, 891 (2019). Registration of the copyright is a prerequisite for filing a lawsuit to enforce those rights. *Id.* at 887. If infringement occurs before a copyright owner applies for registration, that owner may eventually recover damages for the past infringement, as well as the infringer's profits. *Id.* at 891.

Were the duty to preserve evidence conditioned upon the defendant's opinion that the threatened litigation had merit, that duty would seldom arise. And, while in extreme cases involving threats of patently frivolous litigation a duty to preserve evidence may not arise, this is not such a case.

Target has also argued that because it heard nothing in response to its October 10, 2018 letter denying liability, it reasonably concluded the issue had been resolved and no lawsuit was foreseeable until the complaint was filed in May 2020. The flaw in this argument is manifest. The duty to preserve arises when the litigation is reasonably foreseeable, not when it commences. And Target does not argue that it preserved evidence for some period but lifted its preservation hold after time had passed.

The Court finds Target's duty to preserve evidence in this case arose when it received the cease-and-desist letter. The letter asserted N.O.C.'s rights, enclosed several photos of his artwork and the allegedly infringing Cat & Jack products, and expressed an intent to sue for Target's use of N.O.C.'s works unless the parties could reach a resolution without the need for a lawsuit. The letter was sufficient to put Target on notice that a copyright infringement lawsuit was reasonably foreseeable even if Target considered it meritless. But this finding does not resolve the specific question of whether the loss of particular ESI is sanctionable under Rule 37(e).

Under paragraph (1) of Rule 37(e) the Court examines whether ESI was lost because Target failed to take reasonable steps to preserve it; the ESI cannot be restored or replaced; and Cooley suffered prejudice from its loss. If so, the Court may order measures commensurate to cure such prejudice. In contrast, sanctions under paragraph (2) cannot be imposed absent a finding by the Court that Target acted with intent to

deprive Cooley of the use of the ESI. If the Court so finds, it may order more severe

sanctions such as an adverse inference jury instruction or dismissal of the lawsuit.

In its motion Cooley requested five specific sanctions:

(1)  striking Target's independent creation defense;

(2)  issuing a mandatory, adverse inference instruction that the jury presume the
     evidence Target destroyed favored Plaintiff;

(3)  allowing the parties to put on evidence of Target's record destruction and
     submitting the question of Target's intent for the jury to decide;

(4)  precluding Target from offering any evidence affirmatively suggesting or
     supporting it independently created its Accused Infringing Products without any
     knowledge, notice or awareness of Plaintiff's child, N.O.C., or his artwork; and

(5)  permitting the parties to present evidence to the jury regarding the loss and
     likely relevance of Target's records that the jury may consider with all other
     evidence in the case.

Motion, Dkt. No. 208. These sanctions fall squarely within Rule 37(e) governing the

preservation of ESI. Cooley does not seek monetary sanctions under any civil procedure

rule, nor does she seek sanctions under Rule 37(b) for violation of a discovery order.[4]

Cooley also invokes the Court's inherent authority to impose sanctions, but the

Court ordinarily will not exercise such authority when a specific civil procedure rule

applies. *See Schlafly v. Eagle Forum,* 970 F.3d 924, 936 (8th Cir. 2020) (court ordinarily

should rely on federal rules rather than its inherent power to sanction bad faith conduct,

but "court may safely rely on its inherent power" if it determines the rules are "[not] up to

---

[4] Although Cooley asserts that Target violated a court order to produce license
agreements, she does not request any sanctions directed to this purported violation. *See*
Pl. Mem. 41-42 (invoking only Rule 37(e) sanctions), Dkt. No. 210. She only discusses it
as an example of Target's lack of diligence in responding to discovery. *Id.* at 26-27.
Cooley's loss-of-ESI and prejudice arguments in her sanctions motion pertain to Target's
independent creation defense, not to any information that would be found in license
agreements.

the task") (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50 (1991)). Similarly, while Cooley urges the Court to "contextualize Target's intentional destruction of ESI within Target's consistent pattern of discovery abuses" [Pl. Mem. 29, Dkt. No. 210], the Court finds no basis and no need to go outside Rule 37(e), which "addresses itself with particularity to the consequences of a failure" to preserve ESI. *See Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 207 (1958) (quoted in *Sentis Group, Inc. v. Shell Oil Co.,* 559 F.3d 888, 899 (8th Cir. 2009)).

The Court first addresses Cooley's request for the most severe sanctions. Her requested sanctions (1), (2), and (4) are encompassed by Rule 37(e)(2), which requires a finding by the Court that any failure to preserve ESI was done with the "intent to deprive" Cooley of the use of the ESI in her copyright infringement lawsuit. A "finding of intent is a highly contextual exercise," and "[w]hen a corporation is involved, the inquiry depends in part on corporate policies, but also to some extent on the intent of corporate employees." *Morris v. Union Pacific R.R.,* 373 F.3d 896, 902 (8th Cir. 2004). The Court finds no such intent here. As discussed below, much of the ESI at issue no longer existed or was unavailable when Target received the September 25, 2018 cease-and-desist letter. In addition, though Target stopped using two messaging and file-sharing platforms (GroveSite and FlexPLM) in 2020, it archived these platforms. The ESI Cooley wants, however, is not accessible in the archived format. Cooley characterizes this as intentional post-lawsuit destruction of evidence, but there is nothing to indicate that any archiving issues were caused by Target's intentional desire to get rid of evidence that would be useful to Cooley in her infringement lawsuit. The Court finds the facts and circumstances

here do not support a finding that Target's failure to preserve any particular ESI was done intentionally for the purpose of depriving Cooley of evidence relevant to her lawsuit.

The Court next turns to the specific types of ESI that Cooley asserts were lost because Target did not take reasonable steps to preserve the ESI pursuant to Rule 37(e)(1), as a result of which Cooley alleges she was prejudiced.

### A.   Design Files

Target produced the design files for the Cat & Jack polka-dot clothing sold for the fall season in 2018. Those files were stored on the shared network drive. They included the reduced-color-intensity copy of Davis's original paper drawing of the dot, Davis's first repeating patterns made from that drawing, and the additional color variations (colorways) she prepared. *See* Exs. G to J, Dkt. Nos. 242-1 to 242-4. There is no evidence that any separate and unique design files ever existed on other platforms, or that any Target designer had a practice of not saving design files on the shared network drive.

Cooley points out that the piece of paper on which Davis drew the crayon dots was not saved, and the original scan of that piece of paper (before Davis reduced the color intensity using NedGraphics) was also not saved in the network drive. Davis Tr. 216-17, Dkt. No. 213-8. Rather, that original scan was only saved in Davis's scan folder on the laptop, so it was gone whenever her 2017 laptop was replaced. *Id.* at 217. But the only difference between the original scanned image and the image she saved in the network drive is the intensity of the color. Cooley has not explained how the original-color-intensity scan is relevant or material to her "copying" claim and has not identified any way in which she has been prejudiced by the fact that it was not saved in the network drive.

### B.      SharePoint and OneDrive

Target's Rule 30(b)(6) witness Wortman testified that employees did not have access to the SharePoint and OneDrive platforms until summer 2018, several months after the design process for the fall 2018 Cat & Jack product line was completed. Wortman Tr. 66-67, Dkt. No. 213-7. Cooley disputes the assertion that these platforms were not available earlier than summer 2018, citing testimony from social media employee Marcia Hernandez. Pl. Mem. 19-20, Dkt. No. 210. But the testimony Cooley cites pertains to activities that occurred in summer 2018 relating to the recruitment of N.O.C. and other young influencers for the @TargetTag social media campaign, the Instagram Collaborator Services Agreement between Target and N.O.C., and the @TargetTag kickoff event called CrushCon. Hernandez Tr. 98-100, 109-10, 138-41, 159-60, Dkt. No. 213. @TargetTag was launched to promote the Wild Fable and Original Use young adult clothing lines and did not involve the Cat & Jack line of clothing for toddlers and children. Kaufman Tr. 8-9, 31, Dkt. No. 213-6; Glotfelty Decl. ¶ 10, Dkt. No. 232.

Cooley has not identified anyone involved in the design process for the Cat & Jack products who used SharePoint and OneDrive in 2017 or early 2018. Product designer Sari Gunderson stated she did not use these platforms for any design work in late 2017 to early 2018. Gunderson Decl. ¶ 5, Dkt. No. 237. Product designer Julie Lovestrand said the same with respect to her team. Lovestrand Decl. ¶ 7, Dkt. No. 219. Product designer Mariya Kroshinskaya stated that her team did not use them for design work in 2017. Kroshinskaya Decl. ¶ 7, Dkt. No. 227. Product designer Danielle Pugliese testified she did not recall when her cross-functional team started using SharePoint. Pugliese Tr. 13, Dkt. No. 212-1. As for Davis, a textile designer rather than a product designer, it does not

appear she was directly asked at her deposition when she first had access to SharePoint and OneDrive and how she did or did not use it. Cooley's memorandum does not cite to any such testimony [Pl. Mem. 17-20,[5] Dkt. No. 210], and the index to Davis's deposition transcript shows only one reference to SharePoint, when she was asked whether she searched for any SharePoint files in 2020 after the lawsuit was filed. Davis Tr. 218-20, Dkt. No. 213-8. Thus, there is no indication any relevant information about the creation of the polka-dot design would be found in these platforms. As described above, the design files themselves were stored on the shared network drive and produced during discovery.

In addition, Target attempted to search SharePoint and OneDrive using search terms agreed upon in this lawsuit, but the searches failed. There was no functional ability to keyword-search SharePoint or OneDrive because the data environment is too large. Wortman Tr. 68-70, 153-54, 156-59,[6] Dkt. No. 213-7.

---

[5] Cooley mentions Davis in a footnote, citing to Target's Answer to Interrogatory No. 13 (which Cooley asserts "describ[es] Ms. Davis' access to 'OneDrive' and 'SharePoint' platforms") and to a Declaration from witness Erickson. Pl. Mem. 19 n.15, Dkt. No. 210. But that interrogatory answer does not in any way "describe" Davis's access to or use of SharePoint, it contains a bare statement that she had such access. Dkt. No. 213-16 at 11-12. Furthermore, the citation to Erickson suggests to the Court that the source of the information for the interrogatory answer may have been Erickson, whose previous information relating to SharePoint had been corrected by Rule 30(b)(6) witness Wortman, as discussed in footnote 6. Thus, without further elaboration by Cooley on the subject of Davis and SharePoint during the 2017 time period, the Court does not find this to be a reliable basis to find that Davis used SharePoint for her design work in 2017 for the Cat & Jack products at issue in this lawsuit.

[6] Cooley previously brought a motion to compel Target to search for ESI in SharePoint and OneDrive based on the testimony of Rule 30(b)(6) witness Erickson [Dkt. No. 140 at 27] that these platforms were searchable by keyword. In opposing that motion Target stated Erickson's testimony was wrong and resulted from the fact that Target did not prepare him to testify on that topic. Dkt. No. 162 at 14. Target offered the Wortman Declaration stating that (1) Target cannot run keyword searches in those platforms and (2) Microsoft did not support those platforms in a way that allowed searches. *Id.* The Court denied Cooley's motion based on this information. *Id.* It turns out the second part of Wortman's statement was incorrect. At his deposition Wortman testified that Microsoft

Cooley has not shown there was likely to be any relevant information stored in SharePoint or OneDrive to start with. She has also not shown it can be keyword-searched, *i.e.,* for any terms related to N.O.C., his artwork, and Cooley's copying claim. Thus, she has not established that any ESI from these platforms was "lost" or that she was prejudiced as a result.

### C.    GroveSite and FlexPLM

GroveSite and FlexPLM are messaging and file transfer systems Target used in 2017-18 to communicate with vendors about the 2018 fall season Cat & Jack products. Ekman Tr. 16, 23, 49, Dkt. No. 213-12. Textile designers would communicate with vendors via discussion threads in FlexPLM. *Id.* at 14, 60. Product designers would use the GroveSite platform. *Id.* at 13.[7] Target stopped using these platforms in 2020. *Id.* at 18-19.

There is no evidence these platforms contained any unique design files; rather, they were used for messages and to pass existing files back and forth. Any design files relayed using these platforms are the same files stored on the shared network drive, *id.* at 26, 49-50, 82-83, which Target has produced.

---

does support searching, but Target's data environment is too large to successfully search and its attempts to do so failed. Dkt. No. 213-7 at 68-70, 153-54, 156-59. Cooley now asserts Target affirmatively misled the Court regarding the technical search capabilities of these platforms. Pl. Mem. 17-18, Dkt. No. 210. The Court has reviewed the record and is satisfied it was not misled.

[7] Rule 30(b)(6) witness Ekman testified: "Textile designers performed their job function in Illustrator, and those files are then shared with the designers, the product designers, who then decide where that artwork is going. And it's the designers' role to communicate that to the vendor." Ekman Tr. 13.

As for communications that were made using the messaging feature of GroveSite and FlexPLM, it appears they cannot be extracted from the archived versions of these two platforms.

As to GroveSite, Target archived, or attempted to archive, the data when Target stopped using this platform, but the archived data is not very user-friendly and apparently the "communication function was not something that was archivable." *Id.* at 21, 23. The archive is not searchable by keyword. *Id.* at 29, 37-38, 48. If any communications were archived, they are not accessible in the archive. *Id.* at 27-29, 41, 58-59, 101-02. It is also not clear that GroveSite was ever keyword-searchable even when Target was still using the system. Cooley has not shown there were reasonable steps Target could and should have taken, even at the time of the September 25, 2018 cease-and-desist letter, that would have preserved any particular communications with vendors via GroveSite regarding the fall 2018 Cat & Jack products.

As to FlexPLM, it too was archived, but communications are not accessible in the archive. *Id.* at 61, 68, 87-88, 101. In addition, even when this platform was operational, the messages would in essence disappear or auto-delete after they were sent. *Id.* at 61-64. This aspect of the system made it essentially unsearchable. *Id.* at 62-66, 101. As with GroveSite, Cooley has not identified any reasonable steps that Target could and should have taken but did not, either in September 2018 or after FlexPLM was archived, that would have preserved relevant communications with vendors.

### D.   Davis's Laptop

Cooley contends Target did not preserve ESI from *any* Target employee's laptop, but her specific arguments pertain to Davis's laptop. *See* Pl. Mem. 9-12, Dkt. No. 210.

16

Cooley asserts that Target's failure to preserve Davis's laptop deprived her of Davis's emails, which may have referred to or attached N.O.C.'s Copyrighted Works, and deprived her of the opportunity to examine the hard drive for any evidence that Davis searched for or visited N.O.C.'s and/or his family's social media accounts displaying the Works, or other evidence to support Cooley's claim that Davis copied the Works.

Both sides agree that the Target laptop Davis used in 2017 was replaced, wiped, and recycled. Therefore, any unique ESI stored on Davis's laptop has been destroyed. However, the record is not clear about when this occurred. At a deposition on November 8, 2021, Rule 30(b)(6) witness Wortman testified that, based on his conversation with Davis, she received a new laptop sometime after 2018 and before March 2020. Wortman Tr. 23-24, 26, Dkt. No. 213-7. The old laptop would have had its hard drive wiped and been recycled. *Id.* at 23. Wortman's testimony about the replacement date was based only on his conversation with Davis; he did not reach out to anyone else at Target to confirm the actual replacement date. *Id.* at 26. A week later, at her own deposition on November 15, 2021, Davis testified, consistent with what Wortman said, that the laptop she had used in 2017 was replaced in 2019. Davis Tr. 9-11, Dkt. No. 213-8.

But a few weeks after the Wortman and Davis depositions, on December 10, 2021 (the last day of fact discovery) Target served a supplemental interrogatory answer stating that Davis actually had two laptops replaced, one in January 2018 and another in April 2019. Target stated as follows:

> <u>INTERROGATORY NO. 11</u>:  Identify and describe in detail the documents, communications, correspondence, **ESI** and/or other files created, generated, drafted, authored, accessed, contributed to, or received by **Becky Davis** during the Relevant Period that Target destroyed, deleted or otherwise did not preserve or maintain, including but not limited to, when, how, who and why Target destroyed or deleted each such file.

SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 11: Target incorporates its prior objections by reference and further states as follows: Its investigation is ongoing, but Target has not identified any documents, communications or other ESI that Becky generated or received relating to the scribble dot design that Becky Davis created around August 30, 2017, that are no longer available, with one exception: the paper on which Ms. Davis first drew scribble dots and the initial scan of that paper drawing. In her normal practice, Ms. Davis did not retain paper drawings after scanning them. The initial scan was saved from the scanner to the company-issued laptop Ms. Davis used at the time. Target understands that Ms. Davis used a company-issued laptop until **January 12, 2018, at which point her laptop was replaced.** Ms. Davis's **laptop was replaced again on April 19, 2019. Both older laptops were salvaged by a recycling company, and Target no longer possesses either laptop.** Target cannot determine when Ms. Davis first received the laptop that she used until January 12, 2018.

Dkt. No. 213-16 at 10-11 (emphasis supplied).

Target's supplemental answer does not identify the source of this new information that Davis's laptop was replaced *twice*. It also does not explain why the information was not known and disclosed earlier during discovery, for instance, at the time its Rule 30(b)(6) witness testified regarding Topic 6 which relates to the ESI associated with Rebecca Davis. *See* Dkt. No. 139-4 at 14.[8] On the other hand, Cooley did not seek relief from the Court to further explore the source and reliability of Target's updated information as compared to Davis's recollection that the laptop she used in 2017 was replaced in 2019.[9]

---

[8] In an order dated September 17, 2021 the Court granted in part Cooley's motion to compel and ordered Target to produce a fully prepared Rule 30(b)(6) witness to address Topic 6 along with other topics. Order at 7-13, 16, Dkt. No. 162.

[9] The parties brought two other discovery disputes to the Court during this time frame. On the same day Target served the supplemental answer, (1) Target moved for a protective order to bar six depositions that had been noticed by Cooley [Dkt. No. 176] and (2) Cooley moved to quash Target's subpoena for testimony and documents from her trial counsel [Dkt. No. 184]. The Court granted both motions (though it required the Target witnesses to file declarations). Dkt. No. 203.

Instead, in briefing this sanctions motion Cooley and Target each simply chose their preferred replacement date and treated it as authoritative. But the Court has no way to reconcile the divergent information. The timing matters because, if the laptop was replaced in January 2018, there was nothing to preserve by the time Target received Cooley's cease-and-desist letter eight months later. If instead the laptop was not replaced until 2019, then the Court must examine what ESI existed that Cooley claims Target should have taken reasonable steps to preserve, and determine whether Cooley was prejudiced by its loss.

As to emails, Target's retention or "sweep" policy for Outlook email provides that sent emails are saved for seven days and received emails for 30 days. Dkt. No. 263 at 2 (Target Collaborative Tools Sweep Schedule). Consequently, even if Target had suspended operation of this sweep function on Davis's laptop when it received Cooley's cease-and-desist letter in September 2018, relatively few emails (and none from 2017) would have been preserved. Moreover, it does not seem likely that emails from August and September 2018 would contain information relevant to the creation (or alleged copying) of the polka-dot design during the 2017 to early 2018 time period.

In addition, it turns out that Davis's emails from June to September 2017 were preserved pursuant to a litigation hold in an unrelated lawsuit. Wortman Tr. 77-79, Dkt. No. 213-7. Any of those emails that relate to the agreed-upon search terms in this lawsuit have been produced to Cooley. *Id.* at 80. Although Cooley expresses suspicion about the existence of this separate litigation hold, it is unclear how she is prejudiced by the discovery that Davis's emails during part of the relevant time period were *not* lost. This is especially so given the fact that, absent this litigation hold, these 2017 emails would not

otherwise have existed on Davis's laptop at the time of Cooley's September 2018 cease-and-desist letter. And this assumes that Davis's 2017 laptop itself existed in September 2018.

As to the hard drive of Davis's laptop, Cooley argues it might have contained evidence that Davis saw and copied N.O.C.'s Copyrighted Works in 2017 during the design process for the Cat & Jack clothing. She contends she might have discovered smoking-gun evidence such as browsing history showing Davis searched N.O.C.'s and/or his family's social media accounts that displayed the Copyrighted Works, or saved documents containing the Works. But, while not having the laptop deprives Cooley of the possibility of discovering potential smoking-gun evidence, the "access" prong of an infringement claim does not require her to show that Davis *in fact* accessed any of N.O.C.'s 12 Copyrighted Works during the design process. She is not foreclosed from arguing reasonable access and substantial similarity to support the "copying" element of her infringement claim and to rebut Target's independent creation defense. She has in fact explored with Davis and other witnesses the facts related to "access" and "copying" of N.O.C.'s Works, and she has briefed these issues for summary judgment.

The Court thus finds there is no prejudice to Cooley from lost emails and limited, if any, prejudice to Cooley from the loss of the hard drive of Davis's 2017 laptop, even assuming it existed as of September 2018. The Court cannot resolve in this motion the opposing facts regarding when the laptop was replaced, and it would also be inappropriate to prescribe any curative measure under Rule 37(e)(1) given this present posture. The parties' summary judgment and *Daubert* motions are pending before the District Judge. Whether there will be a trial (and if so, the scope of the issues to be tried

on the merits) is not yet settled. Once that is determined, issues regarding admissibility of evidence and jury instructions are matters for the District Judge.

## ORDER

The Court, being duly advised in the premises, upon all the files, records and proceedings herein, now makes and enters the following Order.

**IT IS HEREBY ORDERED**:  Plaintiff Kristen Cooley's Motion for Sanctions for Spoliation of Evidence and Pattern of Discovery Abuse [Dkt. No. 208] is **DENIED**.


Dated: June 10, 2022                          _____s/David T. Schultz_____
                                                            DAVID T. SCHULTZ
                                                            U.S. Magistrate Judge