## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Kristen N. Cooley, guardian of the
estate of N.O.C., a minor,

Civil No. 20-2152 (DWF/DTS)

Plaintiff,

**MEMORANDUM
OPINION AND ORDER**

v.

Target Corporation, Target Enterprise,
Inc., and John Does 1-10,

Defendants.

_____

Bradley E. Beckworth, Esq., Cody L. Hill, Esq., Jeffrey John Angelovich, Esq., Lisa P.
Baldwin, Esq., Ross Leonoudakis, Esq., and Susan Whatley, Esq., Nix Patterson LLP;
Christopher P. Renz, Esq., and Karl L. Cambronne, Esq., Chestnut Cambronne PA;
Howard N. Wisnia, Esq., Wisnia PC, counsel for Plaintiff Kristen Cooley.

Faris Rashid, Esq., Jeya Paul, Esq., Sybil L. Dunlop, Esq., Greene Espel PLLP; counsel
for Defendants Target Corporation and Target Enterprise.

_____

## INTRODUCTION

This matter is before the Court on Plaintiff Kristen Cooley's motion for partial

summary judgment (Doc. No. 326) and Defendants Target Corporation and Target

Enterprise's (collectively, "Target") motion for summary judgment (Doc. No. 317).  Also

before the Court are the parties' respective motions to exclude expert testimony.  (Doc.

Nos. 339, 347.)  For the reasons set forth below, the Court grants Target's motion for

summary judgment, and denies as moot Cooley's motion for partial summary judgment.

In addition, the Court denies as moot the parties' motions to exclude expert testimony.

## BACKGROUND

Defendant Target is a well-known national retailer with corporate headquarters based in Minnesota.  Relevant to this case is Target's "Cat & Jack" clothing line.  The Cat & Jack products use a design and pattern that Target describes as "scribble dots." (Doc. No. 321 ("Rashid Decl.") ¶ 2, Ex. 31.)  The scribble-dot pattern is used on a variety of Cat & Jack products including clothing, backpacks, lunch bags, shoes, swimsuits, and other accessories.

Plaintiff Kristen Cooley is the mother of N.O.C., a seventeen-year-old artist living with autism.  (Doc. No. 332 ("Cooley Decl.") ¶ 3.)  N.O.C. has created a collection of original works of art, including his "sketch-style dot art."  (Doc. No. 16 "(Amended Compl.") ¶ 6.)  Cooley asserts that the guardianship of N.O.C.'s estate is the lawful owner of valid registered copyrights in the creative expressions of N.O.C.'s works of art. (Cooley Decl. ¶ 6-7.)  Cooley, on behalf of N.O.C., alleges that Target copyrighted twelve pieces of N.O.C.'s artwork ("Copyrighted Works") and used them in Target's Cat & Jack apparel line.[1]  (Amended Compl. ¶ 11-12, 17.)  N.O.C. created the Copyrighted Works between 2012 and 2018.  (Cooley Decl. ¶ 9, Exs. 1-4, 6-11, 13-14.).  Below are representative examples of the Copyrighted Works at issue:

---

[1]    Cooley originally alleged that fifteen works were copyrighted but has since narrowed the case to twelve Copyrighted Works, numbered 1-4, 6-11, 13, and 14.  (*See* Doc. No. 328 at 2.)

**Copyrighted Work No. 2 – Registration No. VA 2-202-255**



**Copyrighted Work No. 6 – Registration No. VA 2-202-261**



(Amended Compl. ¶ 36.)

### A.   Target's collaboration with N.O.C.

In the summer of 2018, Target became aware of N.O.C.'s artwork.  (Doc. No. 232

("Glotfelty Decl.") ¶ 4-5.)  Target started the "@TargetTag" Instagram account to

increase Target's engagement with Gen Z teenagers by featuring content created by

artists who partnered with Target.  (*Id.* ¶ 2.)  Employees of Target's marketing

department searched on the internet and social media to find potential creative partners for the @TargetTag project.  (Doc. No. 372 ("Kaufman Decl.") ¶ 2.)  Samantha Kaufman, a copyrighter in Target's marketing department, came across N.O.C. around June 2018, when she saw a video posted on the Instagram account of Krink, a New York City art supply company.  (*Id.*)  The video was posted on May 8, 2018, and shows N.O.C. making a block pattern on canvas.  (*Id.*)

In July 2018, Target invited then 14-year-old N.O.C. to Target's headquarters in Minnesota to participate in a social media promotional project called "CrushCon." (Glotfelty Decl. ¶ 6.)  The represented purpose of CrushCon was for Target to recognize talented young artists as social media influencers and provide them with tools to continue to pursue creative outlets and produce creative content.  (*Id.* ¶ 2-4.)  During CrushCon, N.O.C. participated in various collaborative projects with Target employees and other young artists.  (*Id.* ¶ 6-8.)  Participants of CrushCon were also asked to paint a jacket from Target's Wild Fable brand.  (*Id.* ¶ 8.)  The Wild Fable brand was aimed at Gen Z purchasers.  (*Id.*)  The project did not involve Target's Cat & Jack brand, which focused on toddlers and young children.  (*Id.* ¶ 10.)

A few months after CrushCon, Cooley discovered that Target was selling its line of Cat & Jack products.  (Rashid Decl. ¶ 2, Ex. 30.)  Cooley believed the pattern on the products was strikingly similar to N.O.C.'s artwork.  (*See id.*)  Cooley sent a demand letter to Target in September 2018, alleging that certain Cat & Jack products infringed copyrights held by N.O.C.  (*Id.*)  On October 10, 2018, Target responded to Cooley, explaining that the Cat & Jack products at issue did not infringe N.O.C.'s copyrights

4

because they were designed well before Target knew N.O.C.  (*Id.*, Ex. 31.)  A year and a half later, Cooley filed this action.  Cooley alleges that seventeen Target products ("Accused Products") infringe on copyrights held by Cooley on N.O.C.'s behalf. Examples of the Accused Products are shown below:

**<u>Accused Product No. 1 – SKU No. 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</u>**



**<u>Accused Product No. 12 – SKU No. 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</u>**



(Amended Compl. ¶ 76.)

**B.      Target's design process**

Target designers create many clothing designs for Cat & Jack in-house.  The

process takes about a year from design to final product.  (Rashid Decl. ¶ 2, Ex. 1

at 27:19-24.)  The process starts by deciding the season's theme.  (*Id.*)  Target's trend

team creates a trend direction document that highlights trends for the season.  (*Id.*

at 29:11-14.)  Target's textile designers are also given an art direction document that

builds on the trend direction.  (*Id.*)  The textile designers then begin working on designs.

(Doc. No. 320 ("Davis Decl.") ¶ 10-11.)  After the textile designers complete their

designs, those designs are made available to Cat & Jack product designers, and the

product designers choose which designs to use for the products.  (Rashid Decl. ¶ 2, Ex. 6

at 25:5-7.)

In the summer of 2017, the trend team developed a "Kid Creator" theme for

products to be sold in the summer and early fall of 2018.  (*Id.*, Ex. 1 at 124:13-17.)  The

trend direction document that Target provided to its textile designers highlighted various

prints and patterns to be used in potential designs, including "[d]ots, spots + speckles"

and "[s]cribbles + doodles."  (*Id.*, Ex. 12 at 5.)  The document also featured a shirt with

yellow polka-dots and an image of black polka-dots filled with cross-hatching.  (*See id.*)

Target asserts that Rebecca Davis, a senior textile designer at Target, began

working on designs for the Kid Creator theme in August 2017.  (Davis Decl. ¶ 10-11.)

Metadata confirms this timing.  (Rashid Decl. ¶ 2, Exs. 25, 39.)  In a declaration, Davis

stated that she "was inspired by the summer/fall 2018 'Kid Creator' theme" and "took a

red-orange crayon and hand-drew, or scribbled, some polka dots, just like a kid in school

might do." (Davis Decl. ¶ 10.) Davis then scanned the image onto her computer and

reduced the colors. (*Id.* ¶ 12.) She saved the reduced-color image onto Target's network

drive. (*Id.*) Below is a copy of the image:



(Rashid Decl. ¶ 2, Ex. 25.) Once the image was saved as a digital file, Davis was able to

create different color variations of the pattern. (Davis Decl. ¶ 16, Ex. B; Rashid Decl.

¶ 2, Ex. 39.) The patterns were made available to the product designers, and Davis's

pattern was chosen to be used for various Cat & Jack products. Initially, Target asserted

that all Accused Products were designed by Davis without an outside party or vendor.

(Davis Decl. ¶ 15.) Davis later revised her response, concluding that one of the

products—Accused Product 6—was actually created by Target's business partner, Delta

Galil. (*Id.*) Delta Galil submitted an affidavit, stating that the design for Accused

Product 6 was created in September 2017. (Doc. No. 281 ("Rayden Decl.") ¶ 2.)

Davis additionally testified in her deposition that she did not copy the Target scribble design from anyone else.  (Rashid Decl. ¶ 2, Ex. 4 at 114:10.)  Davis stated that she did not "recall having ever seen" N.O.C.'s promotional video that featured his artwork.  (*Id.* at 168:4-6.)  In a later declaration, Davis then said she "can confirm [she] never saw [the video] before."  (Davis Decl. ¶ 9.)

### C.    Summary judgment motions

Target now moves for summary judgment, arguing that Cooley does not have valid copyrights in the Copyrighted Works and that Cooley has failed to establish that Target infringed those works.  Additionally, Cooley moves for partial summary judgment, urging the Court to find as a matter of law that (1) Cooley owns valid copyrights in each of the twelve Copyrighted Works and (2) Target's seventeen Accused Products are substantially similar to the twelve Copyrighted Works.

## DISCUSSION

### I.    Legal Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A party opposing a motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 256.  The Court views

8

the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009).

## II.   Copyright Infringement Claims

"The plaintiff in a copyright infringement claim has the burden to prove ownership of a valid copyright." *Warner Bros. Ent., Inc. v. X One X Prods.*, 644 F.3d 584, 591 (8th Cir. 2011). Cooley must prove that she owns valid copyrights and that Target copied original elements of the copyrighted works. *Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 962-63 (8th Cir. 2005).

### A.   Copyright ownership

A party cannot bring a copyright infringement claim "until preregistration or registration of the copyright claim has been made in accordance with [17 U.S.C. § 411]." 17 U.S.C. § 411(a). A certificate of registration is valid "regardless of whether the certificate contains any inaccurate information" unless (1) the party who applied for the copyright registration knew that the information was inaccurate and (2) the Register of Copyrights would have refused registration if the inaccuracy of the information was known. § 411(b)(1)(A)-(B).

Target argues that the certificates for each of the twelve Copyrighted Works contain inaccurate information and that the Register of Copyrights would have refused registration if the inaccuracy of the information was known. To make that determination, the Court would need to request that the Register of Copyrights advise the Court on the materiality of the inaccuracies. *See* 17 U.S.C. § 411(b)(2). Because the Court grants

Target's motion for summary judgment on other grounds, the Court need not address this issue.

**B.     Copying**

The Court now turns to the issue of copying.  Cooley must demonstrate that the Copyrighted Works were copied by Target.  "Copying can be shown either by (1) direct evidence of copying, or (2) access to the copyrighted material and substantial similarity between the [accused] work and the copyrighted work."  *Warner Bros. Ent., Inc.*, 644 F.3d at 595.  Because there is no direct evidence of copying, Cooley relies on evidence of access and substantial similarity to prove copying.

**1.     Wide dissemination**

Cooley can establish access by demonstrating that Target had an "opportunity to view or to copy" N.O.C.'s work.  *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 942 (8th Cir. 1992).  The "bare possibility" that Target accessed the work is not enough.  *Id.*  Cooley instead "must prove that [Target] had a 'reasonable possibility' of viewing his work" before the worked was allegedly infringed.  *Id.*  Additionally, "[e]vidence that one piece was accessed does not by itself constitute evidence that other pieces were accessed," meaning that Cooley must demonstrate reasonable access for *each* Copyrighted Work.  *R.F.M.A.S., Inc. v. Mimi So*, 619 F. Supp. 2d 39, 63 (S.D.N.Y. 2009) (citing *Taylor Corp. v. Four Seasons Greetings LLC*, Civ. No. 01-1293, 2003 WL 23527789, at *3 (D. Minn. Dec. 11, 2003)).

One way to prove access is by showing that the Copyrighted Works were "widely disseminated to the public."  *Hoch v. MasterCard Int'l Inc.*, 284 F. Supp. 2d 1217, 1220

10

(D. Minn. 2003) (citation omitted).  As Cooley notes, each work was posted in some form on the internet.  But "the mere fact that [the infringed] work was posted on the internet prior to the creation of [the] defendant['s] work is insufficient by itself to demonstrate wide dissemination."  *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 515 (S.D.N.Y. 2008).  Instead, the Court considers the "number of copies distributed, commercial success or notoriety, and national performances or distribution." *Hoch*, 284 F. Supp. 2d at 1220.

Cooley argues that because a Target employee found N.O.C. through social media in 2018, "[t]here is no question that N.O.C.'s online presence was sufficient and widespread enough to provide Target a reasonable opportunity to access [the Copyrighted Works]."  (Doc. No. 363 at 42.)  This argument fails for several reasons.  First, the Target employee who found N.O.C. in 2018 found him through a separate Instagram account— Krink.  (Rashid Decl. ¶ 2, Ex. 5 at 14:14-18.)  The Copyrighted Works were not published on Krink's Instagram account.  Second, there is no evidence that the Target employee that found N.O.C. worked with or had any interaction with Davis or Delta Galil.  Finally, and most importantly, the video was posted in May 2018, *after* the alleged infringement.  To survive summary judgment, Cooley must put forth evidence that Davis had a reasonable possibility of viewing each Copyrighted Work *before* the alleged infringement.

Cooley also focuses on N.O.C.'s general publicity, but that is not the inquiry.  The question is whether each Copyrighted Work "has enjoyed considerable success or publicity."  *Batiste v. Lewis*, 976 F.3d 493, 503 (5th Cir. 2020).  For example, a person

may not prove copyright infringement of a song merely by showing that the singer was popular. Instead, the focus is on the popularity and commercial success of the particular song, not the singer in general. *See ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 998 (2d Cir. 1983) (finding reasonable access when a song was number one in the Billboard charts in the United States for five weeks and one of the "Top Thirty Hits" in England for seven weeks). Similarly, Cooley must demonstrate that each Copyrighted Work enjoyed considerable publicity.[2]

### i.   Copyrighted Works 1 and 9

Significantly, Copyrighted Works 1 and 9 were published after Davis and Delta Galil created the designs for the Accused Works. Copyrighted Work 1 was first disseminated in September 2018 and Copyrighted Work 9 was disseminated in July 2018. (Doc. No. 364 ("Leonoudakis Decl.") ¶ 3, Ex. 36.) While Cooley argues that "Target's creation date remains hotly in dispute" (*see* Doc. No. 363 at 47), no evidence supports this assertion. Davis stated that she created the design in August 2017. (Davis Decl. ¶ 10-11.) Metadata confirms this. (Rashid Decl. ¶ 2, Exs. 25, 39.) Moreover, MaryAnn

---

[2]     In response to Target's motion for summary judgement, Cooley submitted approximately 3,800 pages of exhibits. In her opposition, she cites to only a few hundred pages of those exhibits. The only cited exhibit that details the date of dissemination of each Copyrighted Work, and includes the number of views, likes, shares, and/or comments, is exhibit 36. (*See* Doc. No. 363 at 45.) The Court thus limits its analysis of access to exhibit 36. "District judges are not archaeologists. They need not excavate masses of papers in search of revealing tidbits—not only because the rules of procedure place the burden on the litigants, but also because their time is scarce." *Northwestern Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 662-63 (7th Cir. 1994). The Court will not do counsel's work for them and scour the remaining thousands of pages of documents in search of additional evidence of dissemination.

Kwon, who designed Accused Product 11 using Davis's design, testified that she designed the product in 2017. (Rashid Decl. ¶ 2, Ex. 6 at 60:7-11.) Senior product designer Julie Lovestrand also testified that she had access to the scribble-dot pattern in 2017. (Doc. No. 219 ("Lovestrand Decl.") ¶ 8.) Senior footwear designer Mariya Kroshinskaya said that she chose the scribble-dot design in late 2017. (Doc. No. 227 ("Kroshinskaya Decl.") ¶ 4.) Additionally, senior designer Sari Gunderson stated that she selected the designs for Accused Products 1 and 2 around September or October 2017. (Doc. No. 237 ("Gunderson Decl.") ¶ 4.)

Delta Galil similarly submitted an affidavit indicating that the design for Accused Product 6 was created in September 2017. (*See* Rayden Decl. ¶ 2.) The evidence overwhelmingly shows that the creation date occurred before the start of 2018. Cooley has submitted no evidence to the contrary. Because Copyrighted Works 1 and 9 were first disseminated in 2018, after the alleged infringement, Cooley cannot establish access to those works.

### ii.    Copyrighted Work 2

Copyrighted Work 2 was first published in a video on Facebook by 9Five on April 6, 2016. (Leonoudakis Decl. ¶ 3, Ex. 36.) 9Five is an eyewear company located in California. The video had over 100,000 views within the first 7-10 days and currently has about 125,000 views. (*Id.*, Ex. 34.) The Court finds that the video is not enough to demonstrate a reasonable likelihood of access through wide dissemination. In copyright cases where videos have constituted evidence of wide dissemination, the videos received significantly more views. *See Tee Turtle, LLC v. Anhui Leadershow Household Indus.*

13

*Co., Ltd.*, No. 21-cv-4703, 2021 WL 4815018, at *2 (C.D. Cal. June 17, 2021) (finding

access where the copyrighted work was featured in two TikTok videos that were viewed

over 7.9 million and 4 million times); *Smart Study Co., Ltd. v. A Pleasant Trip Store*,

No. 20-cv-1733, 2020 WL 2227016, at *5 (S.D.N.Y. May 7, 2020) (finding likelihood of

success on copyright infringement claim where copyrighted work appeared in a YouTube

video with 3.1 billion views). And this video only features the Copyrighted Work for

mere seconds.

Copyrighted Work 2 also appeared on N.O.C.'s website. (Leonoudakis Decl. ¶ 3,

Ex. 36.) Between May 2017 and October 2021, N.O.C.'s website has had 13,000 visits.

(Rashid Decl. ¶ 2, Ex. 38.) But it is unclear how many people viewed the website before

the alleged infringement. And of those people, it is equally unclear how many would

have seen the post about Copyrighted Work 2. Without such evidence, the Court will not

speculate.

The work was also posted on Dominic Cooley's Facebook page on April 11, 2016.

(Leonoudakis Decl. ¶ 3, Ex. 36.) The post received 168 likes, 7 comments, and 2 shares.

It is unclear whether Dominic Cooley's Facebook page was public at the time the post

was made. N.O.C. also posted the work on his Instagram page in April 2016. (*Id.*) The

post had 95 likes and 4 comments. Cooley argues that likes/comments are not the same

as views. The burden, however, is on Cooley to put forth specific facts showing that the

work was widely disseminated. The Court will not speculate as to how many views each

post may have received. The question for the Court is whether each Copyrighted Work

"has enjoyed considerable success or publicity." *Batiste*, 976 F.3d at 503. The number

14

of likes and comments gives an indication of the post's popularity.  In this case, less than

200 people interacted with each post.  This is not enough to reasonably establish wide

public dissemination.

### iii.    Copyrighted Work 3

Copyrighted Work 3 was published on February 18, 2012, on Dominic Cooley's

Facebook account.  (*Id.*)  The post had 10 likes, 2 comments, and 2 shares.  Again, it is

unclear whether Dominic Cooley's Facebook page was public at the time the work was

posted.  Regardless, the post is not enough to reasonably establish wide public

dissemination.

### iv.    Copyrighted Work 4

Dominic Cooley posted Copyrighted Work 4 on Instagram on November 21,

2012.  (*Id.*)  The post had 92 likes and 11 comments.  Again, this is not enough to

reasonably establish wide public dissemination.

### v.    Copyrighted Work 6

Copyrighted Work 6 was first disseminated on July 7, 2014.  (*Id.*)  Ashley

Reynolds Montaño posted the work on her Facebook page.  The post received 23 likes

and 3 comments.  It is unclear whether Montaño's Facebook page was public or private at

the time.  Regardless, a post with 23 likes and 3 comments is not enough to reasonably

establish wide public dissemination.

### vi.    Copyrighted Work 7

Copyrighted Work 7 was posted by Michelle Fenner Cooke on Facebook on

March 12, 2016.  (*Id.*)  The post had 59 likes and 16 comments.  It is also unclear

whether Cooke's Facebook page was public or private at the time; however, a post with 59 likes and 16 comments is not enough to reasonably establish wide public dissemination. The work was also posted on N.O.C.'s "yungcheeto" Instagram account twice in October 2017. (*Id.*) But the posts show the work from a distance, making the details indiscernible.

### vii.   Copyrighted Work 8

Copyrighted Work 8 was posted on Dominic Cooley's Facebook page on January 14, 2012. The post received 13 likes, 1 share, and 9 comments. This is not enough to reasonably establish wide public dissemination.

### viii.   Copyrighted Work 10

Copyrighted Work 10 was posted on Dominic Cooley's Instagram account on January 3, 2012. (*Id.*) The post had 15 likes. The work was posted again on Dominic Cooley's Facebook page on January 14, 2012. (*Id.*) The post had 13 likes, 9 comments, and 1 share. This is not enough to reasonably wide establish public dissemination.

### ix.   Copyrighted Work 11

Copyrighted Work 11 was posted on N.O.C.'s website. (*Id.*) The work was completed in June 2014, but it is unclear when it was posted on the website or how many views it received. The work was posted on Dominic Cooley's Facebook page on June 10, 2014. (*Id.*) The post had 209 likes and 37 comments. In addition, the work was posted on N.O.C.'s "yungcheeto" Instagram account on May 16, 2016, and again on March 28, 2017. (*Id.*) The first post had 103 likes and 5 comments, and the second post

had 168 likes and 4 comments.  Again, while these posts may have reached N.O.C.'s friends and family, the posts do not provide evidence of wide dissemination.

Finally, part of the work appears in the 9Five Autism Awareness video.  (*Id.*)  The work appears several times throughout the video, but for no more than a few seconds.  And at times, the work appears far away, making the details hard to discern.  As noted above, the Court finds that the video is not enough to demonstrate a likelihood of access through wide dissemination.

Cooley also asserts that "[m]any guests in [their] home have posted this art on their social media; so it has been visible regularly online."  (*Id.*)  At this stage of the proceedings, however, Cooley must provide evidence to support such assertions.  *See Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 328 (S.D.N.Y. 2021) ("The conclusory claim that the Subject Composition was 'widely shared' is insufficient to meet Plaintiff's burden to show considerable commercial success.").

### x.   Copyrighted Work 13

Copyrighted Work 13 appeared in an art show in California in 2016.  (Leonoudakis Decl. ¶ 3, Ex. 36.)  There is no evidence of how many people attended the art show or whether the art show received national attention.  Additionally, Michelle Fenner Cooke posted the work on Facebook on April 14, 2016.  (*Id.*)  The post received 5 likes.  Part of the work also appears in the 9Five Autism Awareness video.  (*Id.*)  The work is difficult to see and appears for only a few seconds.  (*Id.*)  This is not enough to reasonably establish wide public dissemination.

### xi.   Copyrighted Work 14

Copyrighted Work 14 was posted on N.O.C.'s website on May 5, 2017.  As noted above, the Court does not know how many people visited the website before 2018.  And there is also no evidence of how many people viewed Copyrighted Work 14 while on the website.  The mere fact that the work was on the internet is not enough to demonstrate wide dissemination.

### 2.   Chain-of-events theory

Cooley also appears to argue a "chain of events" theory to establish access. Although Cooley does not explicitly state this theory in her brief, she seems to argue that Davis or Delta Galil may have discovered N.O.C.'s work by a particular chain of events whereby Davis or Delta Galil may have been exposed to the Copyrighted Works.  In other words, Cooley contends that Davis and Delta Galil could have seen N.O.C. on the internet, which could have led them to access the specific Copyrighted Works, similar to how the Target marketing employee discovered N.O.C. in 2018.  Cooley has been unable to identify even a partial chain of events that would lead a reasonable jury to conclude that Davis or Delta Galil had access to N.O.C.'s work in 2017.  There is no evidence that anyone from Target, prior to 2018, worked with N.O.C., viewed N.O.C.'s artwork, or knew who N.O.C. was.  Without any such evidence, there is nothing that links Davis or Delta Galil to the Copyrighted Works and Cooley's chain-of-events argument fails. *Gal v. Viacom Int'l, Inc.*, 518 F. Supp. 2d 526, 538-39 (S.D.N.Y. 2007) (dismissing copyright infringement claim where the plaintiff submitted no evidence suggesting that the defendants were linked to the copyrighted work in any way prior to the infringement).

The mere fact that Target designers use the internet for inspiration is not enough to link Davis or Delta Galil to posts featuring the Copyrighted Works.

In sum, Cooley cannot demonstrate that Target had access to N.O.C.'s work—either through wide dissemination or by chain of events—before the alleged infringement.  The Court thus grants Target's motion for summary judgment.

## CONCLUSION

N.O.C. is no doubt a talented artist with an inspiring story, and his artwork has clearly touched his community.  At this stage of the proceedings, however, Cooley must bring forward specific facts demonstrating that Target had a reasonable possibility of accessing each of the Copyrighted Works before the alleged infringement.  Because no such evidence has been provided, the Court must grant Target's motion for summary judgment.

The Court also understands that Cooley has identified a separate potential copyright claim regarding N.O.C.'s smiley face designs.  (*See* Doc. No. 295.)  Before further litigation, the Court strongly encourages the parties to meet and discuss a resolution that would serve the best interests of both parties.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendants Target Corporation and Target Enterprise's motion for summary judgment (Doc. No. [317]) is **GRANTED**.

2.     Plaintiff Kristen Cooley's motion for partial summary judgment (Doc. No. [326]) is **DENIED AS MOOT**.

3.     Defendants Target Corporation and Target Enterprise's motion to exclude expert testimony (Doc. No. [339]) is **DENIED AS MOOT**.

4.     Plaintiff Kristen Cooley's motion to exclude expert testimony (Doc. No. [347]) is **DENIED AS MOOT**.

5.     Plaintiff Kristen Cooley's claims against Defendants Target Corporation and Target Enterprise are **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  September 28, 2022             s/Donovan W. Frank_____
                                      DONOVAN W. FRANK
                                      United States District Judge